IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| ROXANNE EARLY AND EDWARD RANSOM, INDIVIDUALLY AND AS LEGAL HEIRS TO THE ESTATE OF SHARON RANSOM, DECEASED; §§§§§§§ Plaintiffs, § § VS. § § § TOYOTA MOTOR CORPORATION, § TOYOTA MOTOR ENGINEERING & § MANUFACTURING NORTH AMERICA, § INC., AND TOYOTA MOTOR § MANUFACTURING, KENTUCKY, INC., § § Defendants. § | CIVIL ACTION NO. _____ |

## PLAINTIFFS' ORIGINAL COMPLAINT

**TO THE HONORABLE UNITED STATES DISTRICT JUDGE OF SAID COURT:**

COMES NOW, ROXANNE EARLY AND EDWARD RANSOM, INDIVIDUALLY AND AS LEGAL HEIRS TO THE ESTATE OF SHARON RANSOM, DECEASED (hereinafter referred to as "Plaintiffs"), and respectfully file this Original Complaint against TOYOTA MOTOR CORPORATION, TOYOTA MOTOR ENGINEERING & MANUFACTURING NORTH AMERICA, INC., AND TOYOTA MOTOR MANUFACTURING, KENTUCKY, INC. (hereinafter referred to as "Defendants"), and in support hereof would state and show the following:

### A. Parties

1. Plaintiff Roxanne Early is the biological mother of Sharon Ransom, deceased. She resides in and is a citizen of Pittsburgh, Pennsylvania.

2. Plaintiff Edward Ransom is the surviving spouse of Sharon Ransom, deceased. He resides in and is a citizen of Grapevine, Texas.

3. Defendant Toyota Motor Corporation is a foreign Corporation doing business in Texas, and service of process upon this Defendant may be had by serving its president, Shoichiro Toyoda, at 1 Toyota-Cho, Toyota, 0471, Japan.

4. Defendant Toyota Motor Engineering & Manufacturing North America, Inc. is a foreign Corporation and at all times doing business in State of Texas and service of process upon this Defendant may be had by serving Secretary of State/Corporate Division, State Capitol, Ste. 152, Frankfort, Kentucky 40601.

5. Defendant Toyota Motor Manufacturing, Kentucky, Inc. is a foreign Corporation and at all times doing business in State of Texas and service of process upon this Defendant may be had by serving its registered agent for service, CT Corporation System at 4169 Westport Rd., Louisville, KY 40207.

## B. Jurisdiction

6. This Court has jurisdiction over the lawsuit under the provisions of 28 U.S.C. Section 1332. The parties to this lawsuit are citizens of different states, and the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs.

## C. Facts

7. On December 26, 2009, Monty Hardy was driving a 2008 Toyota Avalon (VIN 4T1BK36B48U278056) traveling northbound in the 2800 block of Lonesome Dove Road in Southlake, Texas. Sharon Ransom was the restrained right front seat passenger. Hadassah Vance and Wendy Akion were the restrained rear seated passengers. All of the

occupants of the vehicle were tragically and needlessly killed when the vehicle experienced Sudden Unwanted Acceleration (SUA). Due to this SUA condition, the vehicle failed to allow the driver to stop at the intersection of Lonesome Dove Road and Burney Drive. Instead, the vehicle accelerated through the intersection, through a drainage area, struck a fence and tree and ultimately landed in a small pond. None of the restrained occupants were able to extricate themselves and they all perished by drowning.

### D. Cause(s) of Action as to Defendants Toyota Motor Corporation, Toyota Motor Engineering & Manufacturing North America, Inc., and Toyota Motor Manufacturing, Kentucky, Inc.

8. Defendants designed, manufactured, marketed, assembled, and/or tested said vehicle in question to be unreasonably dangerous and defective within the meaning of Section 402(A) Restatement (Second) Torts, in that the vehicle was unreasonably dangerous as designed, manufactured, assembled, marketed, and/or tested because of the following defects:

   a. Toyota has experienced what is commonly referred to as Sudden Unwanted Acceleration (SUA) incidents since 2003 involving numerous make, model and year vehicles dating back to 1999;
   b. Toyota and/or the NHTSA has had thousands of reported incidents where various make, model and year vehicles experienced Sudden Unwanted Acceleration (SUA);
   c. Citizens have petitioned the NHTSA numerous times since 2003 requesting that Sudden Unwanted Acceleration (SUA) on various make, model and year vehicles dating back to 1999 be investigated;
   d. The NHTSA and outside NHTSA vendors have tested various Toyota make, model and year vehicles to see if they are prone to accelerate when subjected to electrical magnetic interference or EMI. The results proved that Toyota's engine rpm increased;
   e. Toyota has had various recalls, technical service bulletins, silent recalls, and dealer notices to evaluate the electronic control unit that governs the ETCSI/ECU on various make, model and year vehicles since 1999;
   f. Toyota has had language in its owner's manuals outlining that EMI, radio interference, 2-way radios or other devices in certain

       Toyota vehicles can cause vehicles to accelerate or not function properly;

g. Toyota has conducted algorithm flashover on certain make, model and year vehicles;

h. Toyota investigated incidents of Sudden Unwanted Acceleration (SUA) and corrected these issues in countries other than the United States months and years before any action was taken by Toyota in the United States;

i. Toyota has consistently blamed Sudden Unwanted Acceleration (SUA) on driver error;

j. Toyota issued recalls on numerous make, model and year vehicles for floor mat interference with gas pedal operation as causing some Sudden Unwanted Acceleration (SUA) incidents;

k. Toyota issued a recall on numerous make, model and year vehicles for gas pedal sticking as causing some Sudden Unwanted Acceleration (SUA) incidents;

l. Toyota has failed to issue a sticky gas pedal recall on numerous other vehicles;

m. Toyota has failed to issue any recall on issues related to electrical issues such as EMI, radio interference, algorithm issues, computer code or chip manufacturing issues, electronic control unit circuitry issues including manufacturing, connection, software problems, heat/cold/moisture/vibration of the electronic control unit on ETCSI/ECU issues. Some people have also complained that when the cruise control is engaged, the vehicle can suddenly accelerate;

n. Toyota has recently disclosed that it is having software problems on its Prius brakes. However, Toyota still has not addressed the accelerator issues with these other vehicles;

o. Further, the NHTSA announced on February 4, 2010 that it is probing Toyota's electronic throttle systems as the cause for Sudden Unwanted Acceleration (SUA);

p. Toyota withheld data from the NHTSA regarding Sudden Unwanted Acceleration (SUA) incidents;

q. The NHTSA has also received an anonymous letter addressing throttle cable problems that Toyota's upper management knew about and covered up because Toyota owns a large stake in the company;

r. Defendants also failed to use a 3 channel electrical system that has multiple redundant systems so that if an electrical surge/fault/short circuit occurs, a malfunction or fault cannot occur which can lead to Sudden Unwanted Acceleration (SUA);

s. Defendants failed to use a brake override design like multiple other vehicle manufacturers such that when the brakes are applied, the engine throttle is overcome;

t.  Defendants failed to use a smart pedal design like other vehicle manufacturers such that when the brakes are applied, the engine throttle is overcome;

u.  Defendants have failed to conduct critical design analysis on its electronic control unit system to evaluate what will happen when certain faults occur with the electrical system, when the software for the ECU suffers a software failure, when the ECU gets too hot, cold or wet, when the ECU is contaminated during manufacturing;

v.  Defendants failed to have adequate quality control procedures and manufacturing quality controls in place for its ECU supplier;

w.  Defendants failed to insure that electrical circuitry are installed and manufactured properly;

x.  Defendants failed to conduct proper engineering analysis, failure mode effects analysis, fault tree analysis, design, quality control analysis, root cause analysis, emerging hazard analysis to evaluate the potential risks, hazard and danger of unwanted vehicle acceleration due to electronic issues with the ECU, software issues in the ECU, environmental conditions of the ECU or mechanical issues of the throttle;

y.  Defendants knew its vehicles were prone to experience Sudden Unwanted Acceleration (SUA) because Defendants had its EDR supplier stop recording engine speed/RPM, if the brake pedal was depressed, if accelerator pedal was depressed, if cruise control was on, the position of the transmission selector lower because this data would indict Defendants' Sudden Unwanted Acceleration (SUA) problems. Alternatively, Defendants is preventing access to all of the EDR data and is only furnishing the bare amount of data. Back in 2003 and earlier, Defendants' EDR data included engine speed/engine RPM, brake application and gas pedal depression. This goes directly to defendants notice of the problem and willingness to cover up the problem;

z.  Toyota's President and Vice President told the NHTSA that Defendants knew over one year ago (November 2008) that it had Sudden Unwanted Acceleration (SUA) problems but failed to conduct a timely recall which exposed millions of people to Sudden Unwanted Acceleration (SUA) incidents;

aa. Toyota has furnished a defective design and unreasonably dangerous vehicle that is prone to Sudden Unwanted Acceleration (SUA), loss of control and loss of braking.  Toyota had prior notice and knowledge of this same condition and elected to sell these vehicles knowing they were placing people at risk. Defendants failure to install or retrofit with a brake override or smart pedal design is a design defect;

bb. Toyota failed to prevent or guard against its vehicles from experiencing Sudden Unwanted Acceleration (SUA) by using safer alternative designs such as brake override/smart pedal designs;

    cc.    Toyota failed to warn, advise or instruct users on what to do in the event a Sudden Unwanted Acceleration (SUA) occurred;

    dd.    Toyota failed to properly test for Sudden Unwanted Acceleration (SUA) when it had notice of prior complaints, prior NHTSA investigations and prior lawsuits;

    ee.    Toyota failed to conduct proper engineering analysis for Sudden Unwanted Acceleration (SUA) when it had notice of prior complaints, prior NHTSA investigations and prior lawsuits;

    ff.    Toyota furnished a defectively manufactured vehicle whose components cause the vehicle to experience Sudden Unwanted Acceleration (SUA), loss of control and loss of braking; and

    gg.    The subject vehicle experienced Sudden Unwanted Acceleration (SUA) for any of the reasons described above. Further, the cruise control was engaged at the time of the subject crash. As a result, decedent was killed and his two passengers were seriously injured because the vehicle could not be stopped.

9.    Defendants were negligent in the following respects as it relates to the subject vehicle and its component parts:

    a.    Failing to monitor the quality control ETCSI/electronic control unit supplier;

    b.    Failing to impose rigorous manufacturing quality standards on its ETCSI/electronic control unit supplier;

    c.    Failing to timely recall vehicles after thousands of Sudden Unwanted Acceleration (SUA) complaints were reported directly to Toyota and the NHTSA;

    d.    Failing to undertake any post sale duty to warn users about the potential risks, hazards and dangers that customers were having with Sudden Unwanted Acceleration (SUA) incidents with this vehicle and others across the world;

    e.    Failing to use brake override/ smart pedal devices that have been used by manufacturers for decades;

    f.    Toyota has failed to issue a sticky gas pedal recall on numerous other vehicles;

    g.    Toyota has failed to issue any recall on issues related to electrical issues such as EMI, radio interference, algorithm issues, computer code or chip manufacturing issues, electronic control unit circuitry issues including manufacturing, connection, software problems, heat/cold/moisture/vibration of the electronic control unit on ETCSI/electronic control unit. Some people have also complained that when the cruise control is engaged, the vehicle can suddenly accelerate;

    h.    Toyota has recently disclosed that it is having software problems on its Prius brakes. However, Toyota still has not addressed the accelerator issues with these other vehicles;

    i.    Toyota withheld data from the NHTSA regarding Sudden Unwanted Acceleration (SUA) incidents;

    j.    The NHTSA has also received an anonymous letter addressing throttle cable problems that Toyota's upper management knew about and covered up because Toyota owns a large stake in the company;

    k.    Defendants also failed to use a 3 channel electrical system that has multiple redundant systems so that if an electrical surge/fault/short circuit occurs, a malfunction or fault cannot occur which can lead to Sudden Unwanted Acceleration (SUA);

    l.    Defendants failed to use a brake override design like multiple other vehicle manufacturers such that when the brakes are applied, the engine throttle is overcome;

    m.    Defendants failed to use a smart pedal design like other vehicle manufacturers such that when the brakes are applied, the engine throttle is overcome;

    n.    Defendants failed to have adequate quality control procedures and manufacturing quality controls in place for its ETCSI/ECU supplier;

    o.    Defendants failed to insure that electrical circuitry are installed and manufactured properly;

    p.    Defendants failed to conduct proper engineering analysis, failure mode effects analysis, fault tree analysis, design, quality control analysis, root cause analysis, emerging hazard analysis to evaluate the potential risks, hazard and danger of unwanted vehicle acceleration due to electronic issues with the ETCSI/ECU, software issues in the ECU, environmental conditions of the ETCSI/ECU or mechanical issues of the throttle;

    q.    Defendants knew its vehicles were prone to experience Sudden Unwanted Acceleration (SUA) because Defendants had its EDR supplier stopped recording engine speed, engine RPM, if brake was depressed, if accelerator pedal was depressed, if cruise control was on, the position of the transmission selector level because this data would indict Defendants' Sudden Unwanted Acceleration (SUA) problems. Alternatively, Defendants is preventing access to all of the EDR data and is only furnishing the bare amount of data. Back in 2003 and earlier, Defendants' EDR data included engine throttle, engine RPM and brake/accelerator application percentage. This goes directly to Defendants notice of the problem and willingness to cover up the problem;

    r.    Toyota's President and Vice President told the NHTSA that Defendants knew over one year ago that it had Sudden Unwanted Acceleration (SUA) problems but failed to conduct a timely recall

        which exposed millions of people to Sudden Unwanted Acceleration (SUA) incidents;

    s.    Toyota has admitted in its commercials that it breached its duty to its consumers which is an admission of negligence.

10. Defendants misrepresented the Quality, Reliability, and Safety of its vehicle:

    a.    Defendants have admitted in commercials that it violated its duty to provide quality, reliability and safety of its vehicles;
    b.    Defendants touted it brand for decades so that people would rely on these representations;
    c.    Defendants have now breached these representations to the detriment of its users;
    d.    Defendants have admitted in its commercials that it has violated its trust and let its customers down.

11. The foregoing acts and/or omissions of Defendants were a producing and/or proximate cause of the Plaintiffs' damages.

12. The foregoing acts and/or omissions of Defendants were a producing and/or proximate cause of Sharon Ransom's fatal injuries.

### E.  Damages To Plaintiffs

13. As a result of the acts and/or omissions of Defendants, Sharon Ransom suffered conscious physical and emotional pain, torment, mental anguish, and/or emotional distress prior to her death, and these injuries survive her death through her estate.

14. As a result of the acts and/or omissions of Defendants, Plaintiffs Roxanne Early and Edward Ransom, have suffered past and future:  loss of consortium, and mental anguish as a result of the fatal injuries to Sharon Ransom.

15. As a result of the acts and/or omissions of Defendants, Plaintiffs Roxanne Early and Edward have become obligated to pay reasonable and necessary medical,

funeral, and burial expenses as a result of the fatal injuries to Sharon Ransom.

16.     The above and foregoing acts and/or omissions of Defendants, resulting in the fatal injuries to Sharon Ransom, have caused actual damages to Plaintiffs in an amount in excess of the minimum jurisdictional limits of this Court.

## G.  Prayer

17.     For the reasons presented herein, Plaintiffs pray that upon a final trial of this cause, Plaintiffs recover judgment against Defendants for:

  a. economic and non-economic damages;
  b. prejudgment and post-judgment interest beginning December 26, 2009;
  c. costs of suit; and
  d. all other relief the Court deems proper.

Respectfully submitted,

**The TRACY firm**

  /s/  E. Todd Tracy_____
E. Todd Tracy (Lead Counsel)
State Bar No. 20178650
etoddtracy@vehiclesafetyfirm.com
I. Scott Lidji
State Bar No. 24000336
slidji@vehiclesafetyfirm.com
5473 Blair Road, Suite 200
Dallas, TX  75231
(214) 324-9000 Phone
(972) 387-2205 Fax

**ATTORNEYS FOR PLAINTIFFS**